**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **RAYMOND MONTEZ,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-cv-49** |
| | § | |
| **DANIEL Q. MEJIA,** | § | |
| **RAY E. WILLIAMS, and** | § | |
| **KIMBERLY GARZA,** | § | |
| *Defendants.* | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, RAYMOND MONTEZ, Plaintiff, complaining of Daniel Q. Mejia, Kimberly Garza, and Ray E. Williams, and for causes of action will respectfully show unto the Court as follows:

> "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."

*Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

> "To prevail on a claim for deliberate indifference, the plaintiff must show that a federal actor denied him treatment, ignored his complaints, knowingly treated him incorrectly, or otherwise evidenced a wanton disregard for his serious medical needs."

*Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018).

# <u>SUMMARY</u>

Plaintiff Raymond Montez suffers from Chronic Obstructive Pulmonary Disease ("COPD") a chronic inflammatory lung disease that causes obstructed airflow from the lungs. Mr. Montez's condition requires the use of an inhaler. On December 31, 2020, due to his condition, Mr. Montez experienced shortness of breath while incarcerated at the Texas Department of Criminal Justice James Lynaugh Unit. Mr. Montez complained about severe chest pain to TDCJ Officers Defendant Daniel Mejia and Defendant Ray Williams and specifically requested if he could obtain his inhaler and go to the infirmary. However, Defendant Mejia and Defendant Williams ignored Mr. Montez's pleas and did nothing to get Mr. Montez any medical attention or help of any kind.

Mr. Montez's need for medical attention was so apparent that his fellow inmates yelled to Defendants Mejia and Williams that Mr. Montez required medical attention. Instead, Defendants Mejia and Williams continued to ignored these repeated pleas for help. Mr. Montez ultimately collapsed and fell face and chest first on to the hard cement floor. At no point was Mr. Montez provided with medical care or attention by Defendants Williams and Mejia.

The following day Mr. Montez told Warden Kimberly Garza that he broke something inside his body, needed medical attention, couldn't breathe, and was spitting up blood. Warden Garza ignored Mr. Montez's request for help, and instead told Mr. Montez that she was aware of these issues and, "That's your fucking problem Montez. Get out my face." Disturbingly, Mr. Montez did not receive medical care or attention until four days after he collapsed, and only after his mother called the facility demanding her son receive medical attention. When he was finally seen by a doctor, he was diagnosed with seven fractures of his ribs and a collapsed lung from falling on the hard cement floor, which required placement of a chest tube so that he could breathe.

Defendant Mejia, Defendant Williams, and Defendant Garza each chose to do nothing to get Mr. Montez any help of any kind, despite each having the authority to do so and each being aware of the medical distress which Mr. Montez was complaining. Plaintiff now files this lawsuit against Defendant Mejia, Defendant Williams, and Defendant Garza for violating his constitutional rights under the Eighth Amendment.

## I.
## Parties

1.      Plaintiff Raymond Montez is an individual residing in Bexar County, Texas.

2.      Defendant Daniel Q. Mejia is an individual residing in Pecos County, Texas, and at all times relevant to this lawsuit was an employee working at the Texas Department of Criminal Justice James Lynaugh Unit located at 1098 South Highway 2037, Fort Stockton, Texas 79735. Defendant Mejia is being sued in his individual capacity.

3.      Defendant Ray E. Williams is an individual residing in Pecos County, Texas and at all times relevant to this lawsuit was an employee working at the Texas Department of Criminal Justice James Lynaugh Unit located at 1098 South Highway 2037, Fort Stockton Texas, 79735. Defendant Williams is being sued in his individual capacity.

4.      Defendant Kimberly Garza is an individual residing in Coryell County, Texas and at all times relevant to this lawsuit was an employee working at the Texas Department of Criminal Justice James Lynaugh Unit located at 1098 South Highway 2037, Fort Stockton Texas, 79735. Defendant Garza is being sued in her individual capacity.

## II.
## Jurisdiction and Venue

5.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

6.      Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391 because all or a substantial part of the causes of action accrued in the Western District of Texas.

### III.
### Facts and Allegations

7.      At all times relevant to this lawsuit, Raymond Montez (hereinafter referred to as "Mr. Montez") was held as a convicted inmate in the James Lynaugh Unit in Fort Stockton, Texas (hereinafter referred to as the "Lynaugh Unit").

8.      At all times relevant to the subject matter of this litigation, Defendant Daniel Mejia (hereinafter referred to as "Defendant Mejia") was an employee of the Lynaugh Unit, working for TDCJ, and who was following TDCJ's policies, practices, customs, and training.

9.      At all times relevant to the subject matter of this litigation, Defendant Ray Williams (hereinafter referred to as "Defendant Williams") was an employee of the Lynaugh Unit, working for TDCJ, and who was following TDCJ's policies, practices, customs, and training.

10.     At all times relevant to the subject matter of this litigation, Defendant Kimberly Garcia (hereinafter referred to as "Defendant Garcia") was an employee of the Lynaugh Unit, working for TDCJ, and who was following TDCJ's policies, practices, customs, and training.

11.     People incarcerated within TDCJ are dependent upon TDCJ employees to provide them with medical care.

12.     Prisoners are not free to seek their own medical care, even if they can pay for it.

**Mr. Montez Alerted Defendants Mejia and Williams That He Needed His Inhaler and Required Medical Attention**

13.     In 2019, Mr. Montez was diagnosed with Chronic obstructive pulmonary disease (COPD).

14. COPD is a chronic inflammatory lung disease that causes obstructed airflow from the lungs.

15. COPD causes Mr. Montez to experience shortness of breath, especially after active activity like walking.

16. Mr. Montez has been prescribed an inhaler to treat these symptoms.

17. In 2020, Mr. Montez was incarcerated at the Lynaugh Unit.

18. Mr. Montez informed officials at the Lynaugh Unit that he has COPD and is prescribed an inhaler to treat his symptoms.

19. Officials at the Lynaugh Unit were aware of Mr. Montez's condition and that he was permitted to possess and use an inhaler to treat his symptoms.

20. In order to possess and use an inhaler as an inmate in the Lynaugh Unit, the inmate must have a medical condition necessitating the use of an inhaler.

21. Thus, any Lynaugh Unit officer who saw an inmate who is allowed to possess an inhaler in the Lynaugh Unit would know that the inmate has a medical condition necessitating the use of an inhaler.

22. On December 31, 2020, Mr. Montez started experiencing chest pain while walking in the dayroom of the Lynaugh Unit.

23. Mr. Montez told Defendant Officers Williams and Mejia that he was experiencing severe chest pain.

24. Mr. Montez told both Defendant Williams and Mejia that he needed to access his inhaler which was in his cell as the one he currently had just become empty.

25.     Both Defendant Williams and Defendant Mejia were aware that Mr. Montez had a medical condition necessitating the use of an inhaler since Mr. Montez was permitted to possess and use inhalers as an inmate in the Lynaugh Unit.

26.     Mr. Montez told both Defendant Williams and Mejia that he needed to go the infirmary because of his severe chest pain.

27.     A laymen would know that there is a serious risk of medical harm for someone who needs an inhaler and who is complaining of chest pains and needing medical attention because their inhaler is empty.

28.     Both Defendant Williams and Defendant Mejia knew that there is a serious risk of medical harm for someone who needs an inhaler and who is complaining of chest pains and needing medical attention because their inhaler is empty as the use of inhalers is prevalent even starting in grade school and it is common knowledge that when someone needs an inhaler but can't get to it and is having chest pains that there is a serious risk of harm due to their medical distress.

29.     Neither Defendant Williams nor Defendant Mejia retrieved Mr. Montez' inhaler or provided him with medical care or attention.

30.     Defendant Williams responded "No" in response to Mr. Montez' request to access his inhaler and go to the infirmary.

31.     This statement by Defendant Williams demonstrates that he heard Mr. Montez pleading for medical care and to obtain his inhaler.

32.     Defendant Mejia raised his middle finger at Mr. Montez and smiled then told him "No, go fuck yourself" in response to Mr. Montez's request to obtain his inhaler and go to the infirmary.

33.    This acknowledgement by Defendant Mejia demonstrates that he heard Mr. Montez pleading for medical care and attention.

34.    Although Mr. Montez explained that he was experiencing severe chest pain, needed to go to the infirmary, and that he needed his inhaler, neither Defendant Mejia nor Defendant Williams provided him with medical care nor obtained his inhaler.

35.    Defendant Mejia and Defendant Williams heard Mr. Montez requesting medical attention and requesting to obtain his inhaler due to severe chest pain because Mr. Montez informed the Defendants directly of this information.

36.    Several inmates noticed that Mr. Montez was in pain and out of concern asked him what was wrong.

37.    Mr. Montez told the inmates that he was experiencing severe chest pains and needed medical attention as soon as possible.

38.    Inmates Eddie Rodriguez, Juan David Navaro, and Edward Torres began banging on the picket window in the dayroom and yelling at Defendant Mejia and Defendant Williams that Mr. Montez needed to see a doctor and needed his inhaler.

39.    However, Defendant Mejia and Defendant Williams ignored the inmates' pleas for help on behalf of Mr. Montez and refused to provide Mr. Montez with medical help or attention of any kind.

40.    Defendant Mejia and Defendant Williams heard several other inmates banging on the picket window and yelling that Mr. Montez needed to see a doctor because of his severe chest pain, however Defendant Mejia and Defendant Williams made the choice to ignore these pleas for help despite knowing Mr. Montez had already complained directly to each of them that he was experiencing severe chest pain, needed his inhaler, and needed to go to the infirmary.

41.     Defendant Mejia and Defendant Williams both had the authority to obtain Mr. Montez's inhaler when he was requesting it, however, Defendant Mejia and Defendant Williams made the choice to ignore Mr. Montez's pleas for help despite knowing Mr. Montez was complaining that he was actively experiencing severe chest pain, needed his inhaler and needed to go to the infirmary.

42.     Defendant Mejia and Defendant Williams both had the authority to provide medical care or attention to Mr. Montez when he was requesting for it, however, Defendant Mejia and Defendant Williams made the choice to ignore Mr. Montez's pleas for help despite knowing Mr. Montez was complaining that he was actively experiencing severe chest pain, needed his inhaler, and needed to go the infirmary.

43.     Defendant Mejia and Defendant Williams continued to make the choice not to get Mr. Montez his inhaler or call for medical attention for Mr. Montez even after the other inmates began pleading for them to do so.

44.     Mr. Montez showed obvious signs of needing emergency medical attention as he complained that he was actively experiencing severe chest pain, needing to access his inhaler, and needing a doctor.

45.     Both Defendant Mejia and Defendant Williams were aware of all of the signs and symptoms listed in the preceding paragraphs because they were (1) informed of them by Mr. Montez, (2) informed of them by the other inmates, and (3) could see Mr. Montez experiencing obvious medical distress, but ignored Mr. Montez' pleas for help instead of doing anything to provide him with medical care or attention or by providing him with access to his inhaler.

46.     During his repeated pleas for medical care or attention, Mr. Montez tried to sit down and collapsed.

47.     Mr. Montez hit the hard cement floor when he collapsed.

48.     An inmate ran up to Mr. Montez and tried to turn Mr. Montez on his side so he could breathe.

49.     Defendant Mejia nudged Mr. Montez ribs with his foot and yelled at him to "get the fuck up asshole."

50.     However, Mr. Montez could not breathe or move since he had hit his head hard on the cement floor and was suffering from shortness of breath.

51.     Sergeant Ivan Oaxaca was called to the dayroom after Mr. Montez collapsed.

52.     Sergeant Oaxaca brought Mr. Montez to the infirmary and made a phone call to a medical provider.

53.     Sergeant Oaxaca then told Mr. Montez he looked fine and did not provide Mr. Montez with any medical care or attention.

54.     The fact that Sergeant Oaxaca was called to the day room for Mr. Montez after he collapsed demonstrates that Defendant Mejia and Defendant Williams had the ability to provide Mr. Montez with medical attention when he was complaining he needed it and when the other inmates were complaining Mr. Montez needed it, both of which occurred prior to Mr. Montez collapsing.

**Mr. Montez Alerted Defendant Garza That He Required Medical Attention**

55.     The following day Mr. Montez encountered Defendant Warden Kimberly Garza in the lunchroom of the Unit.

56.     Mr. Montez told Defendant Garza that he broke something inside his body when he collapsed the previous day, that he was in severe pain, that he couldn't breathe, that he was spitting up blood, and that he needed medical attention.

57.     Mr. Montez begged Defendant Garza for an ambulance and told her it was a dire emergency.

58.     Defendant Garza responded to Mr. Montez's pleas for help by stating that she was already aware of the issue and "that's your fucking problem Montez. Get out of my face."

59.     This statement by Defendant Garza demonstrates that she heard Mr. Montez pleading for medical care.

60.     The fact that she stated she was aware of the issue demonstrates that she knew Mr. Montez had collapsed the previous day and had to be taken to the infirmary.

61.     Upon information and belief, since Defendant Garza was "aware of the issue" she was also aware that Mr. Montez had not received any medical care or attention since his collapse the previous day.

62.     Defendant Garza did not provide Mr. Montez with medical care or attention despite Mr. Montez directly communicating to Defendant Garza that that he broke something inside his body, that he needed medical attention, he couldn't breathe, and was spitting up blood.

63.     Mr. Montez continued to have chest pain and shortness of breath and could not eat or sleep because of his excruciating pain.

### Mr. Montez Finally Received Medial Attention and Needed to be Transported to the Emergency Room

64.     Shockingly, Mr. Montez did not receive medical attention until January 4, 2021.

65.     Another inmate – Anthony Gomez – called his family and had them call Mr. Montez's mother to inform her of what happened.

66.     Mr. Montez's mother began calling the Lynaugh Unit to try to get someone to give her son medical attention.

67.     Finally, three days after Defendant Garza had denied him access to medical care and four days after he had collapsed following Defendants Mejia and Williams denying him medical care or his inhaler, Sergeant Gonzales and PREA Officer Lopez went to Mr. Montez's cell to take him to the infirmary.

68.     Sergeant Gonzalez called Mr. Montez a "fucking crybaby" as they walked him to the infirmary.

69.     Once in the infirmary, the doctor asked Mr. Montez, "so you think you are suffering from a broken rib Mr. Montez?"

70.     Mr. Montez explained that it felt like more than one rib was broken and that something felt like it was moving around in his chest.

71.     The doctor ordered x-rays.

72.     Within minutes, the doctor stated that Mr. Montez needed to go to the emergency room because he had several broken ribs and his lung had collapsed and become detached.

73.     Mr. Montez was taken directly to the hospital where more x-rays were taken to confirm his injuries.

74.     The doctor at the hospital told Mr. Montez that he was on the verge of dying and he didn't know how he survived for over four days in that condition.

75.     Mr. Montez had seven fractures on three ribs from when he collapsed after Defendants Mejia and Williams refused to provide him with his inhaler or with medical attention.

76.     Mr. Montez's ribs had punctured and cut open his lung.

77.     Mr. Montez had to undergo emergency surgery to repair his lung.

78.     Mr. Montez was transferred to Medical Center Health System (MCH) hospital in Odessa where he was in intensive care for five days.

79.     He was receiving morphine and other pain relievers due to the immense amount of pain he was enduring.

80.     Had Defendant Garza provided him with medical care and attention when he begged her for it, Mr. Montez would not have continued to suffer in pain for four more days.

81.     Mr. Montez had tubes connected to his lung to help keep it inflated.

82.     As a direct and proximate result of Defendant Mejia, Defendant Williams, and Defendant Garza choosing not to provide Mr. Montez with medical care, Mr. Montez suffered physical pain and suffering, and mental anguish.

83.     Had Defendant Mejia and Defendant Williams provided Mr. Montez with his inhaler or with medical care when he and the other inmates were complaining he needed medical care due to his medical distress he would not have collapsed fracturing his ribs and injuring his lung.

84.     Had Defendant Garza provided Mr. Montez with medical attention when he complained to her that he needed medical care due to his ribs feeling broken, his inability to breathe, and his spitting up blood, then Mr. Montez would not have suffered in immense pain for four more days before receiving medical attention and pain relief.

85.     These injuries were not caused by any other means.

**IV.**
**Causes of Action**

**COUNT 1**

**DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**
**Violation of the Eighth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Defendants Mejia, Williams, and Garza**

86.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

87.     Defendants Mejia, Williams, and Garza were at all times acting under the color of law as on duty TDCJ employees working in the Lynaugh Unit.

88.     Convicted inmates must rely on jail authorities to treat their medical needs; therefore, the government has an obligation to provide medical care for those whom it is incarcerating.

89.     Under the Eighth Amendment, Mr. Montez had a constitutional right to medical care while incarcerated as a convicted inmate.

90.     "'[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hope v. Pelzer*, 536 U.S. 730, 737, 122 S. Ct. 2508, 2514, 153 L. Ed. 2d 666 (2002); quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (some internal quotation marks omitted).

91.     Determination whether punishment is cruel or unusual is made in the context of prison conditions by ascertaining whether the prison officials involved acted with deliberate indifference to the inmates' health or safety. *Hope*, 536 U.S. at 737-38.

92.     A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994).

93.     "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Adames v. Perez,* 331 F.3d 508, 512 (5th Cir. 2003); quoting *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir.2002); citing *Farmer*, 511 U.S. at 832.

94.    A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health or safety" and disregards that risk. *Adames*, 331 F.3d at 512; citing *Farmer* 511 U.S. at 837.

95.    A prison official "knows of" an excessive risk only if (1) he is aware of facts from which he could infer "that a substantial risk of serious harm exists" and (2) he in fact "draw[s] the inference." *Id.*

96.    In order to be deliberately indifferent, a prison official must be subjectively aware of the risk. *Id.*; See *Farmer*, 511 U.S. at 839-40.

97.    A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 847.

98.    In order to prove that an official is subjectively aware of a risk to inmate health or safety, a plaintiff inmate need not produce direct evidence of the official's knowledge. *Adames,* 331 F.3d at 512.

99.    A plaintiff can rely on circumstantial evidence indicating that the official must have known about the risk. *Id.*; *See Hope*, 536 U.S. 730 ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."); *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence[.]").

100.   The plaintiff can produce circumstantial evidence that the risk to inmate health or safety was so longstanding and pervasive that the official must have been aware of this danger. *Adames*, 331 F.3d at 512; See *Farmer*, 511 U.S. at 842–43. 169.

101.    We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. *Hope*, 536 U.S. at 738; *Farmer*, 511 U.S. at 842.

102.    An official's actual knowledge of a substantial risk may only be inferred if the "substantial risk" was obvious. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

103.    Deliberate indifference is shown when the plaintiff properly alleges that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." (emphasis added) *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

104.    A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. (emphasis added) *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006).

105.    The requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. *Farmer*, 511 U.S. at 842.

## DEFENDANT MEJIA

### Defendant Mejia knew of and disregarded an excessive risk to Mr. Montez's health or safety

106.    Defendant Mejia was aware of and ignored obvious indicia of an excessive risk of harm to Mr. Montez's health or safety, specifically including but not limited to, the facts that Mr. Montez communicated that he had severe chest pains, needed to access his inhaler, and needed to go to the infirmary.

107.    Defendant Mejia raised his middle finger at Mr. Montez and told him "No, go fuck yourself" in response to Mr. Montez' request to obtain his inhaler and go to the infirmary.

108.     Inmates drew attention to the fact that Mr. Montez had chest pains, needed to access his inhaler, and needed a doctor by banging on the picket window and yelling that Mr. Montez needed medical attention.

109.     Defendant Mejia was aware that Mr. Montez, as an incarcerated individual was relying exclusively on the law enforcement personnel to provide him with medical care.

110.     Thus, Defendant Mejia was aware of facts from which the inference could be drawn that an excessive risk to Mr. Montez's health or safety existed.  *Hope*, 536 U.S. 730 ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."); *Farmer*, 511 U.S. at 842.

**<u>Defendant Mejia was both aware of facts from which he could infer that a substantial risk of serious harm excited and actually made the inference</u>**

111.     Defendant Mejia actually drew this inference because in response to Mr. Montez pleading that he had had severe chest pains, needed to access his inhaler, and needed a doctor, Defendant Mejia raised his middle finger at Mr. Montez and told him "No, go fuck yourself."

112.     This reaction by Defendant Mejia demonstrates that he heard Mr. Montez pleading for medical care.

113.      Further, Defendant Mejia's actual knowledge of the substantial risk can be inferred because it was so obvious and <u>the need was so apparent that even laymen would recognize that care is required</u> – as Mr. Montez pleaded that he had severe chest pains, needed to access his inhaler, and needed a doctor, and as an incarcerated individual Mr. Montez was relying exclusively on law enforcement personnel – at that moment Defendant Mejia – to provide him with medical care.

114.     Further, Defendant Mejia's actual knowledge of the substantial risk can be inferred because it was so obvious and <u>the need was so apparent that even laymen would recognize that</u>

care is required – as inmates drew attention to the fact that Mr. Montez had severe chest pains, needed to access, his inhaler, and needed a doctor by banging on the picket window and yelling that Mr. Montez needed medical attention.

115.    Thus, Defendant Mejia was deliberately indifferent because he knew of an "excessive risk to [Mr. Montez'] health or safety" and disregarded that risk. *Adames*, 331 F.3d at 512; citing *Farmer* 511 U.S. at 837.

### Defendant Mejia failed to take reasonable measures to abate the risk

116.    Defendant Mejia failed to take reasonable measures to abate the risk by refusing to take Mr. Montez to the infirmary and denying him access to his inhaler.

117.    Defendant Mejia could have taken reasonable measures to abate the risk by simply giving Mr. Montez his inhaler or providing Mr. Montez with medical care or attention.

## DEFENDANT WILLIAMS

### Defendant Williams knew of and disregarded an excessive risk to Mr. Montez' health or safety

118.    Defendant Williams was aware of and ignored obvious indicia of an excessive risk to Mr. Montez' health or safety, specifically including but not limited to, the facts that Mr. Montez communicated that he had severe chest pains, needed to access his inhaler, and needed a doctor.

119.    Defendant Williams responded "No" in response to Mr. Montez' request to access his inhaler and go to the infirmary.

120.    Inmates drew attention to the fact that Mr. Montez had severe chest pains, needed to access his inhaler, and needed a doctor by banging on the picket window and yelling that Mr. Montez needed medical attention.

121.     Defendant Williams was aware that Mr. Montez, as an incarcerated individual was relying exclusively on the law enforcement personnel to provide him with medical care.

122.    Thus, Defendant Williams was aware of facts from which the inference could be drawn that an excessive risk to Mr. Montez's health or safety existed. *Hope*, 536 U.S. 730 ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."); *Farmer*, 511 U.S. at 842.

**<u>Defendant Williams was both aware of facts from which he could infer that a substantial risk of serious harm excited and actually made the inference.</u>**

123.    Defendant Williams actually drew this inference because in response to Mr. Montez pleading that he had had severe chest pains, needed to access his inhaler, and needed a doctor, Defendant Williams responded, "No."

124.    This statement by Defendant Williams demonstrates that he heard Mr. Montez pleading for medical care.

125.    Further, Defendant Williams' actual knowledge of the substantial risk can be inferred because it was so obvious and <u>the need was so apparent that even laymen would recognize that care is required</u> – as Mr. Montez repeatedly pleaded that he needed his inhaler, needed to see a doctor, and had severe chest pains and as an incarcerated individual Mr. Montez was relying exclusively on law enforcement personnel – at that moment Defendant Williams – to provide him with medical care.

126.    Further, Defendant Williams actual knowledge of the substantial risk can be inferred because it was so obvious and <u>the need was so apparent that even laymen would recognize that care is required</u> – as inmates drew attention to the fact that Mr. Montez had severe chest pains, needed to access his inhaler, and needed a doctor by banging on the picket window.

127.    Thus, Defendant Williams was deliberately indifferent because he knew of an "excessive risk to [Mr. Montez'] health or safety" and disregarded that risk. *Adames*, 331 F.3d at 512; citing *Farmer* 511 U.S. at 837.

**Defendant Williams failed to take reasonable measures to abate the risk**

128. Defendant Williams failed to take reasonable measures to abate the risk by refusing to bring Mr. Montez to the infirmary and denying him access to his inhaler.

129. Defendant Williams could have taken reasonable measures to abate the risk by simply giving Mr. Montez his inhaler or providing Mr. Montez with medical care or attention.

## DEFENDANT GARZA

**Defendant Garza knew of and disregarded an excessive risk to Mr. Montez' health or safety**

130. Defendant Garza was aware of and ignored obvious indicia of an excessive risk of serious harm, specifically including but not limited to, the fact that Mr. Montez communicated to Defendant Garza that he broke something inside his body, that he needed medical attention, he couldn't breathe, and was spitting up blood.

131. Defendant Garza responded to Mr. Montez's pleas for help by stating that she was already aware of the issue and "that's your fucking problem Montez. Get out of my face."

132. Defendant Garza was aware that Mr. Montez, as an incarcerated individual was relying exclusively on the law enforcement personnel to provide him with medical care.

133. Thus, Defendant Garza was aware of facts from which the inference could be drawn that an excessive risk to Mr. Montez's health or safety existed. *Hope*, 536 U.S. 730 ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious."); *Farmer*, 511 U.S. at 842.

**Defendant Garza was both aware of facts from which he could infer that a substantial risk of serious harm excited and actually made the inference**

134. Defendant Garza actually drew this inference because in response to Mr. Montez pleading that he broke something inside his body, that he needed medical attention, he couldn't

breathe, and was spitting up blood Garza responded to Mr. Montez' pleas for help by stating that she was already aware of these issues and "that's your fucking problem Montez. Get out of my face."

135. This statement by Defendant Garza demonstrates that she heard Mr. Montez pleading for medical care.

136. Further, Defendant Garza's actual knowledge of the substantial risk can be inferred because it was so obvious and the need was so apparent that even laymen would recognize that care is required – as Mr. Montez pleaded that he had difficulty breathing, chest was spitting up blood, needed medical attention, and had broken something inside of his body, and as incarcerated individual, Mr. Montez was relying exclusively on law enforcement personnel – at that moment Defendant Garza – to provide him with medical care.

137. Thus, Defendant Garza was deliberately indifferent because she knew of an "excessive risk to [Mr. Montez'] health or safety" and disregarded that risk. *Adames*, 331 F.3d at 512; citing *Farmer* 511 U.S. at 837.

**Defendant Garza failed to take reasonable measures to abate the risk**

138. Defendant Garza failed to take reasonable measures to abate the risk by refusing to give Mr. Montez medical care or attention.

139. Defendant Garza could have taken reasonable measures to abate the risk by providing Mr. Montez with medical care or attention.

**The Defendants' Deliberate Indifference Caused Mr. Montez' Injuries**.

140. As a direct and proximate result of Defendant Mejia, Defendant Williams and Defendant Garza not providing Mr. Montez with medical care, Mr. Montez suffered physical pain and suffering, and mental anguish.

141.    As a result of Defendant Mejia's and Defendant Williams' deliberate indifference toward Mr. Montez's health and safety, Mr. Montez succumbed to the medical distress he complained to Defendant Mejia and Defendant Williams about and collapsed onto the ground suffering fractured ribs and a collapsed lung.

142.    As a result of Defendant Garza's deliberate indifference toward Mr. Montez's health and safety, Mr. Montez suffered immense pain and suffering for three additional days without any relief from the pain or medical intervention.

143.    These injuries were not caused by any other means.

## V.
## PUNITIVE DAMAGES

144.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

145.    When viewed objectively from the standpoint of Defendant Mejia, Defendant Williams, and Defendant Garza, at the time of the occurrence, their conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

146.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Mejia, Defendant Willimas, and Defendant Garza, Plaintiff is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

147.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

148.    Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendant Mejia's, Defendant Williams', and Defendant Garza's deliberate

indifference shown toward Mr. Montez. As a result, Plaintiff is entitled to recover all actual damages allowed by law.

149.    Plaintiff contends Defendant Mejia's, Defendant Williams', and Defendant Garza's conduct constitutes malice, evil intent, or reckless or callous indifference to Mr. Montez's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages against Defendant Mejia, Defendant Williams, and Defendant Garza.

150.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff has been forced to suffer:

    a.  Actual damages;
    b.  Physical pain and suffering; and
    c.  Mental anguish, torment; and emotional distress.

151.    Pursuant to 42 U.S.C. § 1983 and 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

152.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demand attorney's fees under 42 U.S.C. §1988.

## VIII.
## JURY REQUEST

153.    Plaintiff respectfully requests a jury trial.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Texas Bar No. 00797196

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

*/s/ Breanta Boss*
BREANTA BOSS
Texas Bar No. 24115768

SCOTT H. PALMER, P.C.
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
breanta@scottpalmerlaw.com

COUNSEL FOR PLAINTIFF